IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

GRADY R. WILLIAMS, JR.,

    Plaintiff,

v.

CIVIL ACTION NO.: CV613-016

STANLEY WILLIAMS; JAMES DEAL;
TERESA TODD; WAYNE JOHNSON;
JIMMY BLAND; and ERIC SMOKES,

    Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Macon State Prison in Oglethorpe, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement while he was housed at Smith State Prison ("SSP") in Glennville, Georgia. Defendants filed a Motion to Dismiss. (Doc. 31). Plaintiff filed a Response. (Doc. 34). For the reasons which follow, Defendants' Motion to Dismiss should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff alleges that a fire occurred in building J-1 of SSP. Plaintiff contends that smoke filled his cell and despite requests for help, no officer responded. Plaintiff asserts that the chains welded on the windows in SSP restrict ventilation. Plaintiff contends that the fire alarm did not sound during the incident. Plaintiff alleges that the control panel that unlocks the cell doors and fire exits was broken, preventing an

effective evacuation from SSP J-1. Plaintiff argues that the failure to repair posed an imminent risk to the inmates' health and safety. Plaintiff asserts that Defendants Williams, Deal, Todd, Johnson, Bland and Smokes were aware of the control panel's broken condition for a couple of months and failed to repair it, which placed him and the other inmates in imminent danger of being trapped in their cells in the event of a major fire. Plaintiff alleges that representatives from the Georgia Department of Corrections conducted an audit of SSP. Plaintiff claims that the inmates housed in J-1 expressed their concerns about these "unsafe, life-threatening" conditions at that time.

Defendants contend that Plaintiff failed to exhaust his administrative remedies prior to filing this cause of action. Defendants allege that Plaintiff filed an initial informal grievance, which was rejected for non-compliance with the grievance process. The Defendants assert that, following this rejection, Plaintiff did not pursue further administrative remedies in accordance with the grievance policy. Defendants argue that they are not liable based on respondeat superior for the acts of unnamed "officers" who ignored his requests for help. Defendants assert that Plaintiff fails to state a claim under section 1983 because there is no allegation of an "extreme condition" or that Defendants were deliberately indifferent. Defendants also contend that Plaintiff failed to allege any physical injury that is more than *de minimis*, as a result of a constitutional violation. Defendants argue that they are entitled to qualified immunity for all monetary damages because Plaintiff cannot prove a constitutional violation. Finally, Defendants claim that Plaintiff is not entitled to injunctive relief because he is no longer incarcerated at SSP, rendering Plaintiff's injunctive relief claim moot and Plaintiff's request does not meet the specificity requirements of Federal Rule of Civil Procedure 65.

AO 72A
(Rev. 8/82)

## STANDARD OF REVIEW

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. at 1374. (internal punctuation and citation omitted). A judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id.

## DISCUSSION AND CITATION OF AUTHORITY

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). Congress clearly established this mandate in the Prison Litigation Reform Act ("PLRA"), which states, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Porter v. Nussle, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. 534 U.S. at 524. The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on

AO 72A
(Rev. 8/82)

the course of its proceedings." Id. at 90-91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

In Turner v. Burnside, the Eleventh Circuit set forth a two-step process for lower courts to utilize in order to examine the issue of exhaustion of administrative remedies. 541 F.3d 1077 (11th Cir. 2008). First, the court is to look at the defendant's motion and plaintiff's response; if these conflict, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, under the plaintiff's version of the facts, plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376.

The Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001 sets forth three (3) procedural steps an inmate must complete. These steps include: (1) an informal grievance; (2) a formal grievance; (3) and appeal.[1] An inmate must first file an informal grievance "no later than 10 [ten] calendar days from the date" the inmate was aware "of the facts giving rise to the grievance." (Doc. 31-2, p. 12, Exh.

---

[1] The SOP was amended with an effective date of December 10, 2012; pursuant to this SOP, inmates are no longer required to file an informal grievance. Given that Plaintiff's informal grievance was filed November 13, 2012, the previous version of the SOP is relevant for this Court's purposes.

4

1). "The inmate shall receive a written response within 10 [ten] calendar days of receipt of the informal grievance." Id. An inmate is limited to filing one (1) informal grievance per calendar week. Id. at 11. The "entire complaint must fit on the Informal Grievance Form." Id. at 12. "Informal Grievances with additional pages will be rejected." Id.

The inmate must complete the informal grievance procedure before a Formal Grievance Form will be issued. Id. at 13. The Formal Grievance Form must be returned to the inmate's counselor within five (5) business days of his receipt of the written resolution of the informal grievance. Id. This time limit may be waived for "good cause." Id. "If no Informal Grievance exists, the Formal Grievance will be rejected." Id. After completion of the formal grievance procedure, an inmate has five (5) business days from the receipt of the response to the formal grievance to file an appeal with the Commissioner. Id. at 15. This time limit may be waived for "good cause." Id. The Commissioner's Office has 90 calendar days after receipt of the appeal to respond. Id.

According to Defendants, Plaintiff did not comply with the PLRA requirement to properly exhaust all administrative remedies because he failed to submit an informal grievance (or re-file his first grievance) within the ten-day deadline period. On November 13, 2012, Plaintiff attached a witness statement to his Informal Grievance Number 137846, and it was rejected for not complying with the SOP requirements on November 20, 2012. Defendants assert that when an informal grievance is rejected due to noncompliance with requirements, "the merits of the complaint are not addressed and the inmate is not issued a formal grievance form." (Doc. 31-2, p.3, Cook Aff., ¶ 9). Defendants also contend that Plaintiff did not re-file this grievance after the rejection, and that no allegation was made that Plaintiff pursued his grievance further, "such as by

5

filing a formal grievance or a grievance appeal." (Doc. 31-1, p. 6). Defendants state that, "records indicate that Inmate Williams requested a formal grievance but a formal grievance was not provided based on his failure to comply with the procedure for completing the informal grievance." (Doc. 31-2, p. 5).

Under Plaintiff's version of the facts, Plaintiff used the procedures available at SSP to try and solve the problems on November 13, 2012. On November 20, 2012, Plaintiff was sent a response that the grievance was rejected. Plaintiff alleges that he attempted to re-file his grievance following its rejection, but his counselor refused to submit his grievance on the grounds that the informal grievance deadline had passed.[2] Plaintiff then wrote a letter to the Office of Investigations and Compliance, Inmate Affairs and Ombudsman office.

According to the record, the events giving rise to Plaintiff's Complaint allegedly occurred on November 9, 2012. Plaintiff filed Informal Grievance Number 137846 on November 13, 2012. (Doc. 31-2, p. 26, Exh. 5). This informal grievance was rejected because Plaintiff attached an additional page — a witness statement — to the form, and Plaintiff was informed of this rejection on November 20, 2012. (Doc.1, Exh. C; see also, Doc. 31-2, p. 5, Cook's Aff. ¶ 16). Following the framework established by the Eleventh Circuit in Turner by looking first to the Plaintiff's version of the facts, this cause of action must be dismissed. Plaintiff states that he did not re-file his November 13, 2012, grievance following its rejection because he was informed he was no longer within the

---

[2] According to Plaintiff's Amended Complaint, this may not be the first time that prison officials returned a rejected response to a grievance after the informal grievance filing deadline, making it impossible for Plaintiff to re-file the grievance. Plaintiff filed a grievance on September 16, 2012, for an incident which occurred on September 14, 2012, the status date on his Offender Grievance record is September 21, 2012. (Doc. 10, p. 8; Doc. 31-2, p. 26, Exh. 5). However, Plaintiff received his response on September 25, 2012, the eleventh day following the alleged incident. (Doc. 10, p. 8). He was then told by his counselor that his "grievance was dead." Id.

AO 72A
(Rev. 8/82)

time period allowed for filing such a grievance.³ (Doc. 34, p. 3). Plaintiff's Offender Grievances record reflects the status of this grievance as rejected on November 19, 2012. (Doc. 31-2, p. 26, Exh. 5). Both parties contend that Plaintiff was not notified of the response to his informal grievance until November 20, 2012, the eleventh day following the alleged incident, rendering the ability to re-file an informal grievance within the ten-day deadline impossible. There is no "good cause" provision to waive the informal grievance deadline as there are for the formal grievance and appeal steps.

The SOP does not explicitly require an inmate to re-file a rejected informal grievance. However, given that a noncompliant grievance is rejected rather than denied, re-filing seems to be the only available option in order to complete and comply with the procedural process for the first step. Defendants contend that a "rejected" grievance does not complete the informal grievance procedure or entitle an inmate to be issued a formal grievance. The SOP does not define at what point an informal grievance procedure is considered "complete." Nevertheless, because the policy distinguishes between "rejected" and "denied," the logical conclusion to reach is that "rejected" confirms that a grievance was not in compliance with the rules, while a denial would refer to the merits of the grievance. This Court must follow the law handed down by the Supreme Court in <u>Woodford v. Ngo</u> that inmates must comply not only with deadlines, but also the procedural requirements or rules in order to properly exhaust. 548 U.S. at 90. The SOP clearly spells out its procedural requirement that informal grievances should be received with no additional pages attached. The record demonstrates

---

³ The Eleventh Circuit has held that a plaintiff is not required to complete a step in the process (file an appeal) when the plaintiff was not "allowed" to do so. <u>Bugge v. Roberts</u>, 430 F.Appx. 753, 756 (2011). However, this case is distinguishable on grounds that the plaintiff in <u>Bugge v. Roberts</u>, complied with the procedures applicable to him, the five-day deadline, but was mistakenly told he could not appeal his formal grievance. <u>Id.</u>; <u>see</u> also Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999).
... 
AO 72A
(Rev. 8/82)

Plaintiff's failure to properly comply with this requirement.[4] The Supreme Court has recognized that inmates, who very often "proceed *pro se*, are forced to comply with numerous unforgiving deadlines and other procedural requirements" such as these. Though this may be said to be an impossible or "unforgiving" deadline once the rejection was received, the rejection necessarily establishes that Plaintiff failed to comply with the "deadlines and other critical procedural rules" and did not *properly* exhaust his administrative remedies.[5]

The evidence regarding whether there was a request for a formal grievance is conflicting.[6] Following the framework provided in Turner, looking to the Defendants' motion and the Plaintiff's response, when the parties' version of the facts conflict, the court would ordinarily take the Plaintiff's version of the facts as true. However, given the Plaintiff's failure to comply with the procedural requirements for the first step, Plaintiff's request to proceed to step two, for a formal grievance, is immaterial to this Court's analysis. The parties' facts do not conflict as to the informal grievance's noncompliance

---

[4] Cf. Bishop v. McLaughlin, No. 5:11-CV-107(MTT), 2012 WL 1029499, at *5 (M.D. Ga. March 26, 2012) (noting that plaintiff properly complied with the SOP "only one additional page" requirement for formal grievance step).

[5] Woodford, 548 U.S. at 90. In Woodford v. Ngo, the respondent filed a grievance that was rejected as untimely. Id. at 87. The Ninth Circuit held that respondent had exhausted all the administrative remedies available to him, because none remained available to him. Id. The Supreme Court reversed this holding, stating that the PLRA required proper exhaustion. Id. at 103. The Court declined to address the "possibility that prisons might create procedural requirements for the purpose of tripping up all but the most skillful prisoners." Id. at 102-03.

[6] Plaintiff makes no express allegation that he requested a formal grievance or appeal, but only that he asked to re-file his informal grievance. The informal grievance form provided to the Court by Plaintiff indicates that he did request a formal grievance, while the form provided by the Defendants has both the "yes" and "no" boxes crossed through in response to whether Plaintiff requested such form. (Doc. 1, p. 17, Exh. C; Doc. 31-2, p. 28, Exh. 6). However, Defendants state that Plaintiff requested such form, but his request was denied for not completing the informal grievance step. Plaintiff does not allege that he complied with the SOP requirements for the first step and then attempted or requested to pursue further administrative remedies and was denied such. See Bishop, 2012 WL 1029499, at *5. (plaintiff was found to have exhausted his administrative remedies when he attempted to appeal his formal grievance, provided court with copy of grievance, of which he alleged he gave to defendant, but was never filed).

8

and as to why the grievance was rejected. The grievance stated on both copies provided by the parties to this Court that it was rejected for having an attached page. Plaintiff admits that his grievance was rejected and he no longer had the opportunity to file a grievance within the required deadline. Therefore, Plaintiff did not comply and fulfill the necessary procedural requirements and steps as outlined in the Standard Operating Procedure and as mandated by the PLRA. Plaintiff did not properly exhaust his administrative remedies prior to the filing of his Complaint. Given this ground for dismissal, it is not necessary to address the remaining grounds of Defendants' Motion to Dismiss.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion to Dismiss be **GRANTED**. It is also my **RECOMMENDATION** that Plaintiff's Complaint be **DISMISSED**, without prejudice, due to Plaintiff's failure to exhaust his administrative remedies prior to filing this cause of action.

**SO REPORTED** and **RECOMMENDED**, this 17th day of October, 2013.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)